STONE and another, Appellants, vs. TOWN OF TILDEN, Respondent.

*May 11—June 10, 1904.*

*Bridges: Breaking by traction engine: Excessive weight and failure to plank: Causal connection: Pleading.*

1. In an action for injury to a traction engine caused by the breaking down of a highway bridge which it was crossing, the complaint showed that the engine with its equipment and the load it was hauling exceeded seven tons, the lawful weight, although only the engine itself, which weighed less than 12,800 pounds, was upon the span which gave way. *Held*, that the causal connection between the excessive weight and the breaking of the bridge conclusively appeared, notwithstanding an allegation to the contrary.

2. The purpose of the requirement in sec. 1347b, Stats. 1898, as amended by ch. 197, Laws of 1899, that, before an engine shall cross, a bridge shall be spanned with planks upon which the engine wheels shall rest, was not solely to protect the covering of the bridge, but also to effect a distribution of the weight of the engine; and where it appears that when an engine broke through a bridge such planking and consequent distribution were absent, the court must say, as matter of law, that such absence contributed to the breaking of the bridge. *Walker v. Ontario*, 118 Wis. 564, distinguished.

APPEAL from a judgment of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Affirmed.*

The complaint, as amended by certain admissions on the trial, alleged that a certain highway bridge in the defendant town was insufficient in construction and out of repair, to the knowledge of the defendant; that the plaintiffs, on October

11, 1902, were carefully moving a traction engine, which itself weighed not to exceed 12,800 pounds, but with its equipments, attachments, and the load which it was hauling exceeded seven tons in weight; that while all of said outfit was upon said bridge, but only the engine itself upon the span in question, said span gave way by reason of its insufficiency and want of repair, precipitating the engine to the stream below, and causing it substantial injury; that said breaking was caused wholly by the said span being insufficient to sustain such weight of 12,800 pounds; "that what said engine was moving at the time, other than its equipments and attachments, did not in any manner cause or contribute to the breaking of such bridge, not being upon that span of the bridge at the time; that the failure on the part of the plaintiffs to lay planks upon that part of such bridge did not in any manner cause or contribute to the breaking thereof," it being conceded that the plaintiffs wholly omittted to lay planks across said bridge. There were also the usual allegations of plaintiff's ignorance and the town's knowledge of the defects, absence of negligence on plaintiff's part, and the giving of notice of the injury, etc.

Upon the trial, an objection to any evidence under the complaint in the nature of a demurrer *ore tenus* was sustained, and judgment entered dismissing the complaint, from which plaintiffs appealed.

For the appellants there was a brief by *W. H. Stafford,* attorney, and *W. F. Bailey,* of counsel, and oral argument by *Mr. Bailey.*

For the respondent there was a brief by *Henry Lebeis, Jr.,* attorney, and *W. M. Bowe,* of counsel, and oral argument by *Mr. Bowe.*

WINSLOW, J. The complaint, as amended, shows affirmatively that the traction engine in question weighed less than 12,800 pounds, but that with its equipments and the load

which it was hauling it exceeded the weight allowed by the statute, and that the bridge was not spanned with planks as required by the statute, before crossing. Sec. 1347*b*, Stats. 1898, as amended by ch. 197, Laws of 1899. The appellant's claim is that, because it is alleged that neither the weight of the load which the engine was pulling nor the failure to lay planks upon the bridge caused or contributed to the breaking of the bridge, it must be held that all causal connection between the two failures to comply with the law and the breaking of the bridge is negatived, and hence that the complaint states a good cause of action.

As far as the unlawful weight of the engine and load is concerned, this contention seems well-nigh conclusively answered by the decision in the case of *Welch v. Geneva,* 110 Wis. 388, 85 N. W. 970, where a verdict was directed for the town on the ground of the excessive and unlawful weight of the engine, it being said that "there is a direct causal connection between the excessive and unlawful weight of the engine and the accident which occurred. . . . It appearing conclusively that the using of this heavy engine contributed directly to produce the accident complained of, we see no ground upon which the plaintiff can base a right of recovery." The conclusion that there was a direct causal connection between the unlawful weight of the engine and the breaking of the bridge was not based upon evidence of witnesses to that effect, but upon the immutable laws of nature. If a heavy body resting upon a supporting surface breaks through that surface, it breaks through because of its weight; and the allegation that its weight did not contribute to the result is simply the allegation of a conclusion known to be false. But it is said that the engine alone weighed but 12,800 pounds, and that only the span upon which the engine rested went down; that the engine was pulling a load, which rested upon another span; and that by reason of the fact that it was pulling a load the weight of the engine itself was

decreased. The discovery that the weight of an engine or self-propelling body is decreased by the fact that it is drawing a load is certainly important, if true. It follows, of course, that if the load be heavy enough, and the pull exerted vigorous enough, the weight of the propelling body may finally be reduced to zero, and the problem of aerial navigation is solved. Unfortunately, however, for the theory advanced, the laws of physics are unalterably opposed to it. The well-known fact is that the downward thrust of an engine or propelling body is increased by the fact that it is drawing a load. While it would probably be inaccurate to say that the weight is increased, the added downward thrust necessary to overcome the inertia of the load amounts practically, so far as the strain upon the supporting surface is concerned, to an increase of weight. So the result is inevitable that, when it appears that an engine with its equipments and load upon a bridge weighs more than the statutory limit of weight, and the bridge goes down under it, the legal conclusion that the excessive weight contributed to produce the result is conclusive because of natural laws, and that an allegation to the contrary is of no effect.

A somewhat different argument is made as to the failure to plank the bridge. It is said that this court has held that the sole purpose of this requirement of the law is to protect the covering of the bridge from injury by the calks upon the wheels of the engine. *Walker v. Ontario,* 111 Wis. 113, 86 N. W. 566. It is true that in the case cited it was said that this was the plain purpose of the law, but it was not said that it was the sole purpose, nor do we understand how it can be logically so held. Natural laws clearly suggest another purpose, namely, the distribution of the weight of the engine. That a fragile supporting surface will sustain a considerably greater weight when that weight is distributed over considerable space than when it is massed upon a small space is well known even to the boy who rescues from drowning his com-

panion who has broken through thin ice upon the. village pond. That this distribution of weight and consequent partial relief of the bridge from concentration of pressure was one of the purposes sought to be attained by this requirement we cannot doubt, and in any case, where it appears that the planking and consequent distribution were absent, the court must say as matter of law that the absence contributed to the breaking of the bridge, and the causal relation between the failure and the following accident is shown.

It is true that it was said in the case cited that the court was not justified·in saying as matter of law that the causal relation existed in that case, and upon the subsequent appeal in the same case (*Walker v. Ontario,* 118 Wis. 564, 95 N. W. 1086), it was held that the evidence conclusively proved that the causal relation did not exist; but it must be remembered that in that case it was not a case of entire absence of planking, but simply a case of the use of two narrow planks side by side, upon which the engine rested, instead of one wide plank. Thus the distribution of weight was fully accomplished. It appeared also upon the last appeal that, while the entire bridge was spanned by plank, there was about three feet at each end where the plank was but ten inches in width. This fact, however, did not affect the distribution of weight, and, it appearing that the engine did not leave the plank, it was rightly concluded that the causal relation did not appear. The distinction between that case and the present is very obvious. In that case, though the statute was not literally complied with, it affirmatively appeared that the distribution of weight and consequent relief from strain was fully accomplished; hence that it must be shown by evidence that either the narrowness of the plank used or the failure to span the three feet at each end to the full width of twelve inches bore some causal relation to the accident. In the present case there was an entire absence of plank, and hence no distribu-

tion of weight, and the causal relation appears as matter of law.

*By the Court.*—Judgment affirmed.